IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 05-0017-WS |
| | ) |
| JUAN PEREZ-OLIVEROS, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter is before the Court on defendant Juan Perez-Oliveros' Motion for New Trial (doc. 160). The Motion has been briefed, and is ripe for disposition at this time.

**I.     Background.**

In January 2005, a federal grand jury sitting in the Southern District of Alabama returned a five-count Indictment (doc. 24) charging defendant Juan Perez-Oliveros ("Perez") and a co-defendant with, *inter alia*, possessing with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and conspiring to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846. A jury trial was conducted before the undersigned on January 23 and 24, 2006. At the conclusion of that trial, Perez was found and adjudged guilty of the conspiracy count set forth in Count Two of the Indictment, as well as the possession with intent to distribute count embodied in Count Four. Two days later, Perez, by and through counsel, submitted the instant Motion for New Trial, requesting relief on the bases of an alleged discovery violation by the Government, and alleged Government misconduct.

Testimony at trial revealed that, shortly after midnight on January 10, 2005, Alabama State Trooper Charles Anderson made a traffic stop of a 2002 Chevrolet Avalanche that Perez was driving on Interstate 10 in Mobile, Alabama en route to Atlanta, Georgia. The vehicle was found to contain more than 30 kilograms (approximately 66 pounds) of methamphetamine in a hidden compartment. Upon making this discovery, law enforcement agents transported Perez to the Mobile District Office of the Alabama Bureau of Investigation, where he was detained for several hours, with interview(s) being held at 3:00 a.m. or later. The defense theory at trial was that Perez was a "blind mule," an unwitting participant in the narcotics trafficking activities of

unindicted third parties, and that he lacked knowledge of the methamphetamine secreted in the Avalanche until it was discovered by law enforcement at the time of his arrest. In furtherance of this theory, defense counsel indicated during his opening statement that Perez had been willing to assist law enforcement agents in tracking down the true culprits by, for example, making a controlled delivery of the methamphetamine to his originally scheduled destination. After the Government presented its case-in-chief, Perez himself testified in support of this "blind mule" theory, asserting that he had never been asked by law enforcement to continue transporting the drugs to Atlanta, and that had he been asked he would have done so.[1]

The Motion arises from the trial testimony of DEA Task Force Agent Grissett ("Agent Grissett") concerning his questioning of Perez on the night of his arrest. On his limited direct examination by the Government, Agent Grissett testified only as to the following topics: (a) his employment history; (b) his involvement in receiving, possessing and transporting the methamphetamine seized from the Avalanche; (c) his receipt and review of a DEA Form 7 reflecting the results of DEA laboratory testing as to the chemical composition, purity and weight of such methamphetamine; (d) identification of a representative sample of the methamphetamine seized from the Avalanche, and explanation that the remaining drugs had been destroyed per federal regulations governing bulk seizures; (e) his estimate that the street value of the methamphetamine in the Avalanche, given its high purity and "ice" form, was

---

[1] Perez's specific testimony on this point was as follows:

"Q:  You heard the testimony of Agent Grissett that you did not want to continue cooperating with them. Is that accurate?
"A:  That is not true. They never asked me if I wanted to continue the trip.
"Q:  What did they ask you?
"A:  None of that. They didn't ask me any of that.
                    *                    *                    *
"Q:  Did Agent Grissett give you an opportunity to bring – to continue the trip into Atlanta?
"A:  Not that I can remember. I can't remember having been told that.
"Q:  Would you have done that if they had asked you?
"A:  Sure."

(Trial Excerpts (doc. 172), at 108, 160.)

approximately $3 million; (f) his experience that I-10 is a major drug trafficking corridor from the southwest border to points throughout the United States; and (g) the fact that he and Perez had conversed in English during the January 10 interview, and his perception that Perez appeared to have no difficulty understanding Agent Grissett at that time.  (Trial Excerpts, at 4-11.)  Agent Grissett did not testify on direct examination, and was not asked on direct examination, about the substance of anything he had asked Perez, or anything Perez may have volunteered or mentioned, during that interview.[2]

       On cross-examination, defense counsel elicited numerous details from Agent Grissett concerning the January 10 interview, including the giving of *Miranda* warnings to Perez, Perez's execution of a rights waiver, and Perez's statements concerning his travel arrangements to, and hotel accommodations in, San Antonio, Texas, in the preceding days.  Of critical importance to the instant Motion is the following exchange between defense counsel and Agent Grissett:

> "Q:    Did you ask Mr. Perez to continue going on with going to Atlanta to deliver the drugs?
>
> "A:    Yes, sir.
>
> "Q:    And he said no?
>
> "A:    He said no.
>
> "Q:    Is that your testimony?
>
> "A:    Pardon me?
>
> "Q:    Is that your testimony?
>
> "A:    Yes, sir."

(Trial Excerpts, at 19.)  Agent Grissett did not offer any testimony on direct or re-direct examination regarding the proposed continuation of the drug delivery by Perez.  Nor did defense counsel lodge objections to Agent Grissett's cross-examination testimony on this point, either contemporaneously or at any other time during the trial.

---

[2] During its opening statement, the Government did not allude to anything Perez may have been asked during the January 10 interviews concerning his willingness to make a controlled delivery of the narcotics.  Thus, the first time the jury heard of discussion between Agent Grissett and Perez on this point was when defense counsel elicited such information from Agent Grissett on cross-examination.

It is undisputed that the Government never advised defense counsel prior to trial that Perez had declined a request to continue with the drug run to Atlanta in cooperation with law enforcement agents. Defendant's Motion for New Trial contends that this fact entitles him to a new trial for two reasons. First, Perez maintains that the Government's failure to disclose before trial the substance of his statement declining to make a controlled delivery constitutes a violation of Rule 16, Fed.R.Crim.P. Second, he contends that Agent Grissett's testimony in this regard was an "invention" or a "fabrication," constituting misconduct and warranting a new trial. (Reply Brief (doc. 175), at 4.)

## II.     Legal Standard for Motion for New Trial.

Pursuant to Rule 33(a), Fed.R.Crim.P., upon timely motion by defendant, the Court "may vacate any judgment and grant a new trial if the interest of justice so requires." *Id.* Appellate courts have long recognized that Rule 33 motions "are not favored and are granted with great caution." *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977). Motions for new trial are addressed to the trial court's sound discretion. *See, e.g., United States v. Reed*, 887 F.2d 1398, 1404 (11th Cir. 1989).

Governmental misconduct is one permissible ground for Rule 33 relief. *See, e.g., United States v. Vallejo*, 297 F.3d 1154, 1163-64 (11th Cir. 2002) (new trial may be warranted where prosecutor knowingly used perjured testimony, failed to correct false testimony, or failed to disclose *Brady* information); *United States v. Noriega*, 117 F.3d 1206, 1221 (11th Cir. 1997) ("Where either the government solicits false or misleading testimony or fails to correct it, the falsehood is deemed to be material and thus, to warrant a new trial if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."). As a general rule, however, "[p]rosecutorial misconduct is a basis for reversing an appellant's conviction only if, in the context of the entire trial and in light of any curative instruction, the misconduct may have prejudiced the substantial rights of the accused." *Reed*, 887 F.2d at 1402. Although the Government cannot suppress substantial material evidence, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense"; rather, materiality exists only where "the omitted evidence creates a reasonable doubt that did not otherwise exist." *United States v. Agurs*, 427 U.S. 97, 109-10 & 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

**III.    Analysis.**

    *A.    Alleged Discovery Violation.*

As his first basis for a new trial, Perez asserts that the Government shirked its Rule 16 discovery obligations by failing to disclose to him before trial the substance of his alleged statement to Agent Grissett declining to make a controlled delivery in Atlanta.

Defendant's argument turns on Rule 16(a)(1), Fed.R.Crim.P., which provides that "the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent *if the government intends to use the statement at trial*." *Id.* (emphasis added).  This Rule has been interpreted as meaning exactly what it says.  *See, e.g., United States v. Perez*, 960 F.2d 1569, 1572 (11th Cir. 1992) ("Rule 16 of the Federal Rules of Criminal Procedure requires the government to disclose the substance of any oral statement by the defendant to a government agent which the government intends to offer in evidence at trial.").  In that regard, courts have consistently found that the Government's intent to use an oral statement at trial is a necessary condition precedent triggering a defendant's right to disclosure.  *See United States v. Almohandis*, 307 F. Supp.2d 253, 255 (D. Mass. 2004) ("If there were oral statements made by the defendant to a government agent which the government was not going to use at trial, Rule 16(a)(1)(A) would not impose a duty to disclose them."); *United States v. Small*, 74 F.3d 1276, 1284 (D.C. Cir. 1996) (explaining that Rule 16 requires government to apprise defense of "the substance of a relevant oral statement by the defendant if the government intends to use the statement at trial").  Thus, no discovery violation exists where a defendant cannot show "that the prosecutor intended to use the statement during trial."  *United States v. Wadlington*, 233 F.3d 1067, 1078 (8th Cir. 2000).

The Government maintains that there was no Rule 16 violation because it never intended to use the oral statement in question.[3]  Proceedings at trial unequivocally bolster that contention.

---

    [3]    The Government also suggests that there can be no Rule 16 infraction here because "the undersigned counsel was not aware of the oral statement at issue, prior to its elicitation on cross-examination by the defense counsel."  (Opposition Brief (doc. 164), at 2.)  But this argument construes the Rule 16 obligation too narrowly, artificially compartmentalizing Government lawyers from Government investigators.  In that regard, the Court recognizes that

In his opening statement, the Government's counsel neither identified nor alluded to evidence concerning Perez's stated unwillingness to transport the drugs to Atlanta. Upon calling Agent Grissett to testify, the Government's counsel did not ask him, and Agent Grissett did not volunteer, whether Perez had been asked to make a controlled delivery or whether Perez had assented to same. The jury heard testimony that Perez had declined a law enforcement request to resume his previously scheduled journey to Atlanta only because defense counsel asked pointed questions of Agent Grissett on cross-examination that directly yielded such evidence. Absent such questioning from defense counsel, the jury would have heard no testimony on this point. These circumstances are irreconcilable with any notion that the Government harbored an intent to utilize Perez's statement at trial. In the face of such inescapable conclusions, defense counsel offers no argument whatsoever that the "intent" requirement is satisfied here. The challenged statement is plainly outside the scope of the Government's Rule 16(a)(1) discovery obligation.

The undersigned is cognizant that "[t]he purpose of [R]ule 16 is to protect a defendant's right to a fair trial rather than to punish the government's non-compliance." *United States v. Camargo-Vergara*, 57 F.3d 993, 999 (11th Cir. 1995); *see also United States v. Noe*, 821 F.2d 604, 608 (11th Cir. 1987) (bemoaning the "trial by ambush" that discovery requirements of Rule 16 were designed to prevent). But the principles underlying Rule 16 have not been compromised here. There is no evidence that the Government withheld discoverable information from the defense. There is no evidence that the Government sought to play "hide the ball" from Perez, only to introduce damaging and prejudicial testimony at trial once his counsel's guard was down. There is no evidence of Government obfuscation, misdirection or concealment. "In short, this was not a case in which the prosecutor has carelessly or by design hidden from discovery a

---

the term "government" in Rule 16(a)(1) "may include investigative agencies aligned with the prosecution and to which the prosecution has ready access." *United States v. Brazel*, 102 F.3d 1120, 1150 n.19 (11th Cir. 1997); *see also Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) ("The individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police"); *Orena v. United States*, 956 F. Supp. 1071, 1096 (E.D.N.Y. 1997) ("The government's duty to disclose is not limited to only that information in the possession of or known to the prosecutors; the duty extends to the police and investigators and other investigatory arms of the state teamed with the prosecutors on the particular case.").

statement of the defendant only to spring it in the middle of trial.  We condemn that sort of tactic." *United States v. Martinez*, 763 F.2d 1297, 1315 (11th Cir. 1985); *see also United States v. Cayasso*, 2005 WL 1038772, *4 n.5 (11th Cir. May 4, 2005) (no reversible error in government's failure to disclose defendant's refusal to respond, where government made no use of that fact at trial).  Rather, this is a case in which the Government (through its investigating officers) knew that Perez had expressed unwillingness to continue to Atlanta after his arrest, but opted not to utilize that information at trial.  Only when defense counsel asked Agent Grissett point-blank whether he had asked Perez to make a controlled delivery did the jury hear any evidence on this front.  Under these circumstances, the Court can find no discovery violation, and no impairment of Perez's right to a fair trial.  Defendant's Motion for New Trial on this basis is therefore **denied**.[4]

### B. Alleged Fabrication by Agent Grissett.

As an alternative basis for his Rule 33 Motion, Perez contends that Agent Grissett engaged in misconduct by "inventing" or "fabricating" testimony about Perez's unwillingness to proceed to Atlanta.  As evidence of this purported misconduct, defense counsel points to the

---

[4] To be sure, had Perez been able to muster a showing that the Government intended to use this statement at trial, his Rule 33 request might stand on a different footing.  "Violations of Rule 16 will result in a reversal of conviction only if such a violation prejudices a defendant's substantial rights." *United States v. Chastain*, 198 F.3d 1338, 1348 (11th Cir. 1999); *United States v. Quinn*, 123 F.3d 1415, 1423 (11th Cir. 1997) (similar).  "Substantial rights are violated when the defendant is unduly surprised and lacks an adequate opportunity to prepare a defense." *United States v. Rivero*, 2005 WL 2471018, *1 (11th Cir. Oct. 7, 2005); *see also United States v. Bailey*, 123 F.3d 1381, 1399 (11th Cir. 1999) (similar).  Where it appears that defense strategy may have been sculpted by the Government's Rule 16 violation, a defendant's substantial rights are implicated.  *See Chastain*, 198 F.3d at 1348; *Camargo-Vergara*, 57 F.3d 993, 999 (11th Cir. 1995) (reversing conviction, finding that government substantially prejudiced defense by failing to disclose statement, where defendant could have altered trial strategy had he known that the government would present such testimony); *Noe*, 821 F.2d at 607 (where government failed to disclose defendant's statements in violation of Rule 16(a), then introduced such statements at trial, it "attacked the very foundation of the defense strategy," requiring a new trial).  It could be reasonably argued that Perez's statement expressing unwillingness to continue to Atlanta was detrimental to the defense strategy and that defense counsel might have proceeded differently had such statement been disclosed before trial.  Nonetheless, the Court need not and cannot reach the questions of remedies and "substantial rights" because, as explained above, there was no Rule 16 violation here.

following three items: (a) Agent Grissett's notes make no mention of Perez's rejection of the suggestion that he make a controlled delivery; (b) Perez testified that no law enforcement agent had ever asked him to continue the trip; and (c) during her testimony, BICE Agent Sharon Murphy ("Agent Murphy") purportedly "danced around" this topic on cross-examination.

      These arguments are unpersuasive. That Agent Grissett's notes do not reference the proposed continuation of Perez's journey is not conclusive evidence that he was lying. The "notes" in question are a single page of handwritten notations culled from an interview that lasted between 45 minutes and one hour. (Trial Excerpts, at 17.) They do not purport to be, and indeed could not rationally be, a complete verbatim recitation of everything Perez and Agent Grissett discussed during said interview. And, far from dancing around the subject, Agent Murphy's testimony squarely corroborated Agent Grissett's on this point:

> "A: When we were talking with him and we asked if he is willing to, you know, further this, and he says no, we pretty much stop it right there.
>
> "Q: Is that what happened?
>
> "A: Yes, sir.
>
> "Q: And you didn't write that in your report?
>
> "A: No, sir. There was really no need for us to write that into our report."

(Trial Excerpts, at 54.) Nor is there any basis for granting Perez a new trial simply because his testimony conflicted with Agent Grissett's and Agent Murphy's. After all, "[a] jury is free to choose among reasonable constructions of the evidence." *United States v. Hernandez*, 433 F.3d 1328, 1334 (11th Cir. 2005) (explaining that jury was free to disbelieve defendant's theory where government presented evidence to the contrary). On this record, the jury could have found that Perez was testifying truthfully and that Agent Grissett was lying; however, it was not required to do so, and there were reasonable grounds for it to reach a contrary result. Defendant's Motion for New Trial on the basis of alleged false testimony by Agent Grissett is tantamount to a request that this Court reweigh the evidence and set aside the verdict "simply because it feels some other result would be more reasonable." *Id.* at 1336. This the Court cannot do.

      In short, Perez has come forward with no sustainable justification for granting him Rule 33 relief on the basis of allegedly fabricated testimony by Agent Grissett. Clearly established precedent in this jurisdiction provides that "[f]alse testimony results in a new trial only if the

government knew or should have known that the testimony was false.  Appellant has not shown that the government intentionally or negligently used false testimony; indeed, he has not even shown the testimony to be false." *United States v. Espino-Perez*, 798 F.2d 439, 442 (11th Cir. 1986).  Defendants who merely offer self-serving evidence to contradict a Government witness's testimony "do not prove it false.  Consequently, appellant was not entitled to a new trial ... under Fed.R.Crim.P. 33." *Id.*  The same reasoning and result apply here.

**IV.     Conclusion.**

For all of the foregoing reasons, defendant's Motion for New Trial (doc. 160) is **denied**.

DONE and ORDERED this 28th day of March, 2006.

                                                            s/ WILLIAM H. STEELE
                                                            UNITED STATES DISTRICT JUDGE